UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANIEL M. MADDRY, <br><br> Plaintiff, <br><br> v. <br><br> LUOXUE, et al., <br><br> Defendants. | Case No.  5:25-cv-02449-BLF <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE** <br><br> [Re: Dkt. No. 3] |

Plaintiff Daniel Maddry ("Plaintiff" or "Maddry") brings suit against Defendants Luoxue, Zhang Zhenkai, and Guoyanquing, each alleged to be "an individual or business entity operating out of" China. Dkt. No. 1 ("Compl.") ¶¶ 1, 7–9.  Before the Court is Maddry's Motion for Alternative Service.  Dkt. No. 3 ("Mot.").  Maddry requests a court order to effectuate service via email and "[b]y notifying Amazon.com, Inc., Walmart.com, and eBay.com's legal departments of this lawsuit and requesting that they provide a copy of the Summons, Complaint, and supporting documents to Defendants via their internal communication systems." *Id.* at 1, 3.  For the following reasons, Maddry's motion is DENIED.

**I.  BACKGROUND**

Plaintiff, an individual residing in California, alleges that he is the sole owner of a card game entitled "*Discernment*."  *See* Compl. ¶¶ 1, 6.  Supported by a Kickstarter campaign, *Discernment* was created on June 1, 2023 and published on June 1, 2024.  *Id.* ¶ 12 & Exs. 1, 2. The game includes 500 cards, each with unique content authored by Plaintiff, and is distributed in a "distinctive black and blue pixelated box."  Compl. ¶ 12.  On February 23, 2025, however, Plaintiff "identified counterfeit versions of *Discernment* being sold on Amazon."  *Id.* ¶ 17. Plaintiff determined that other counterfeit listings appeared on Walmart.com and eBay.com as well.  *Id.* ¶ 16 & Exs. 6, 7.  On February 26, 2025 and February 28, 2025, Plaintiff emailed Cease and Desist letters to Defendants.  Compl. ¶ 19.  Plaintiff also "promptly reported the counterfeit

listings to Amazon, which temporarily removed the listings" and "informed Plaintiff that the listings would be reinstated unless proof of a filed lawsuit is provided." *Id.* ¶ 20. Thereafter, Plaintiff filed the present lawsuit, which asserts one cause of action for Copyright Infringement under 17 U.S.C. §§ 106, 501. Compl. at 5. He simultaneously sought a temporary restraining order ("TRO"), Dkt. No. 2, which the Court denied on March 14, 2025, Dkt. No. 12.

In the present motion, Plaintiff states that he "has diligently attempted to identify and locate Defendants." Mot. ¶ 3. He determined that Defendants were "sellers of counterfeit copies" of Plaintiff's game and "[a]ttempted to locate valid business addresses for each Defendant." *Id.* He submitted his Cease and Desist letters to Defendants via email, but Defendants have not responded. *Id.*

## II.   LEGAL STANDARD

Plaintiff Maddry's motion is governed by Federal Rule of Civil Procedure 4(f), which addresses "Serving an Individual in a Foreign Country":

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>> (C) unless prohibited by the foreign country's law, by:
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). Plaintiff specifically invokes Rule 4(f)(3). Mot. at 2. Pursuant to Rule 4(f)(3), alternate service must be (1) directed by the court and (2) not prohibited by international agreement. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). District courts have authorized service by "other means" including "publication, ordinary mail,

2

1  mail to the defendant's last known address, delivery to the defendant's attorney, telex, and . . .

2  email." *Id.* at 1015–16.  More recently, "courts in this district have authorized service of process

3  by social media." *Fabian v. LeMahieu*, No. 19-cv-00054, 2020 WL 3402800, at *3 (N.D. Cal.

4  June 19, 2020) (citing *St. Francis Assisi v. Kuwait Fin. House*, No. 16-cv-3240, 2016 WL

5  5725002, at *2 (N.D. Cal. Sep. 30, 2016) (Twitter); *UBS Fin. Servs. v. Berger*, No. 13-cv-03770,

6  2014 WL 12643321, at *5 (N.D. Cal. Apr. 24, 2014) (LinkedIn)).

## III.   DISCUSSION

Maddry seeks to effectuate service via email and "[b]y notifying Amazon.com, Inc., Walmart.com, and eBay.com's legal departments of this lawsuit and requesting that they provide a copy of the Summons, Complaint, and supporting documents to Defendants via their internal communication systems."  Mot. at 1, 3.  He argues that these forms of service are reasonably calculated to provide notice because "Defendants' primary business activities are conducted online, making service via email and platform notification the most practical and effective method of ensuring notice."  *Id.* at 2–3.  He also argues that Rule 4(f)(3) "permits alternative service even where the Hague Convention applies."  *Id.* at 3 (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988)).

The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (1969) ("Hague Service Convention"), is a multilateral treaty aiming to "simplify, standardize, and generally improve the process of serving documents abroad."  *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017).  It therefore "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies."  *Id.* (quoting *Volkswagenwerk*, 486 U.S. at 699).  The Hague Service Convention governs Plaintiff's request, because China is a signatory to that treaty.

"District courts in the Ninth Circuit are split on the issue of whether defendants may be served outside the United States via email, when the foreign country where service will occur is a signatory to the Hague Service Convention and has not affirmatively agreed to allow email service under that Convention."  *Cadence Design Sys., Inc. v. Fenda USA Inc.*, 734 F. Supp. 3d 960, 963 (N.D. Cal. 2024) (citing *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Technology Co.*, 480 F.

3

Supp. 3d 977, 984 & n.5 (N.D. Cal. 2020)). As explained in *Cadence Design Systems*, the language of the Convention lays out "three principal forms of service": (1) service through "the Central Authority" of the state in which service is to be effectuated, Hague Service Convention, Arts. 2–7; (2) service through various enumerated alternative methods, such as "through . . . diplomatic or consular agents," *id.*, Art. 8, or—in the absence of objection from the destination state—through "postal channels, . . . judicial officers, officials, or other competent persons of the State of destination," *id.*, Arts. 9–10; and (3) service through "methods to which the receiving country has affirmatively agreed or authorized," 734 F. Supp. 3d at 964 (citing Hague Service Convention, Arts. 11, 19). Because "[e]mail is not a listed alternative method, and China has not affirmatively agreed to service via email," some courts in this district have determined that service via email to defendants in China is "prohibited by international agreement." *Id.* at 963–65; *accord Xiu Network*, 480 F. Supp. 3d at 987.

This Court finds the reasoning in *Cadence Design Systems* and *Xiu Network* persuasive. Those courts analyzed the text and structure of both the Convention and Rule 4, as well as relevant precedent, and ultimately concluded that "the Convention delineates the exclusive means by which service of documents may occur in the signatory countries," and those procedures, when available, are "mandatory if documents must be transmitted abroad to effect service." *Cadence Design Sys.*, 734 F. Supp. 3d at 964; *accord Xiu Network*, 480 F. Supp. 3d at 986. If signatory countries too freely "authorize alternative methods of service that [are] unfamiliar to foreign defendants," a real risk of defendants facing default judgments in foreign jurisdictions "without having had an opportunity to defend the claim" arises. *See Cadence Design Sys.*, 734 F. Supp. 3d at 964–65 (quoting *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 288 (3d Cir. 1981)). This result would undermine the purposes of the Convention, which include "ensur[ing] that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time" and "improv[ing] the organisation of mutual judicial assistance for that purpose." Hague Service Convention, Preamble.

Because the Court concludes that service by email on a defendant in China is "prohibited by international agreement," Plaintiff must demonstrate the applicability of a Convention

4

exception before the Court will consider permitting that form of service.  For example, alternative service may be permitted "if the receiving country refuses to complete service for impermissible reasons" or if "the receiving central authority does not return the required certificate showing it has completed service for more than six months." *Cadence Design Sys.*, 734 F. Supp. 3d at 965 (citing Hague Service Convention, Arts. 13, 15).  However, Plaintiff has not submitted any evidence indicating that he attempted to effectuate service under the Hague Convention, so this exception is inapplicable.

It may be the case that the "exception for when the defendant's address is unknown" is applicable here.  *Xiu Network*, 480 F. Supp. 3d at 987 (citing Hague Service Convention, Art. I).  However, Plaintiff has not expressly asserted that Defendants' addresses are unknown, nor has he submitted "evidence to support a showing of reasonable diligence in attempting to discover [their] addresses." *Id.* at 987 n.7 (internal alterations omitted) (quoting *Indagro, S.A. v. Nilva*, No. 07-cv-03742, 2014 WL 1515587, at *4 (D.N.J. Apr. 17, 2014)).

In light of the foregoing, the Court finds that permitting email service at this time is premature and DENIES Plaintiff's motion without prejudice to renewal of the motion at a later date.  The Court does "sympathize with [Plaintiff] over the difficulties of attempting to track down foreign defendants who may be trying to evade service," *Xiu Network*, 480 F. Supp. 3d at 987, and acknowledges that this denial will result in delay.  On the other hand, the Supreme Court has pointed out that "parties that comply with the Convention ultimately may find it easier to enforce their judgments abroad." *Volkswagenwerk*, 486 U.S. at 706.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion for Alternative Service is DENIED WITHOUT PREJUDICE to Plaintiff renewing his motion at a later time.

**IT IS SO ORDERED.**

Dated:  March 18, 2025

_____
BETH LABSON FREEMAN
United States District Judge

5